# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 7-CR-122-GKF |
| RICHARD DALE MONTGOMERY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Motion for New Trial [Dkt. #101] filed by defendant Richard Dale Montgomery ("Montgomery") pursuant to Fed.R.Crim.Proc. 33(b)(1). The United States opposes the motion.

On September 20, 2007, at the conclusion of a four-day jury trial, Montgomery was convicted of coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). [Dkt. #58]. On December 11, 2007, the court sentenced him to 120 months imprisonment followed by seven years of supervised release. [Dkt. #64]. The Judgment and Commitment was entered on December 19, 2007. [Dkt. #66]. Montgomery did not appeal the conviction or the sentence.

### A. Rule 33 Motion

Montgomery, acting pro se, asserts he is entitled to a new trial pursuant to Rule 33(b)(1) on the grounds of newly discovered evidence as follows:

- The government failed to preserve computer chat log records for January 23 and 31, 2007; February 12-16, 19, 21-23, 26-28, 2007; March 1-2, 5-9, 12, 14, 22, 26-27, 30, 2007; April 23-27, 2007; and May 7-11, 14-15, 22 and 24, 2007, which would have been exculpatory in nature;

- Each of these records were in effect destroyed because the government created the record but then failed to preserve the printed text for use at trial by defense counsel;

- On September 17, 2007, moments before trial started, Assistant U.S. Attorney Edward Snow represented to defense counsel the existence and status of computer records seized from defendant's computer, stating that forensic analysis had not been done because the FBI's Computer Analysis Response Examination Team ("CART") office in Oklahoma City was backlogged for over six months. Montgomery alleges, "FOIA records indicate however that records in fact were the subject of FBI computer analysis beginning August 20, 2007 and completed September 21, 2007 and the day after trial was completed;"

- The records "were powerful evidence, exculpatory in nature, and directly impeaching" FBI Agent Ian Buchanan's trial testimony;

- AUSA Snow "ordered the destruction and coverup of the secreted evidence on July 31, 2008."

- "[A] study of the trial transcript and discussions with persons knowledgeable as to information technology now reveal that the Government allowed the admission of perjured testimony" by agent Ian Buchanan.

[Dkt. #101 at 1-4]. The motion attached three documents Montgomery obtained from the FBI pursuant to a Freedom of Information Act ("FOIA") request: (1) an August 20, 2007, request for a CART examination on two computers and additional computer hardware associated with Montgomery; (2) a September 21, 2007, report containing the requested CART analysis; and (3) a July 31, 2008, closing memo confirming AUSA Ed Snow had reviewed the circumstances and status of Montgomery's case and determined all remaining evidence being held by the government could be destroyed or returned. [Dkt. #101 at 11-16].

**B. Standard of Review**

Rule 33 provides:

**(a) Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

**(b) Time to File.**

> **(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

Fed.R.Crim.Proc. 33. Rule 33 authorizes trial courts to grant new trials "if the interest of justice so requires." *United States v. Herrera,* 481 F.3d 1266, 1279 (10th Cir. 2007).

"A motion for new trial based on newly discovered evidence is not favorably regarded and should be granted only with great caution." *United States v. Trujillo,* 136 F.3d 1388, 1394 (10th Cir. 1998) (quotations and citations omitted). To prevail on such a motion, a defendant ordinarily must show (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by the defendant's own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it probably would produce an acquittal. *Herrera,* 481 F.3d at 1270.[1]

For Rule 33(b)(1) purposes, "As a general rule, newly discovered evidence' must have been in existence at the time of trial." *United States v Abello-Silva,* 107 F.3d 22, 1997, 1997 WL 72979 at *2 (10th Cir. Feb. 20, 1997) (*unpublished*) (citing *United States v. Lafayette,* 983 F.2d 1102, 11105 (D.C. Cir. 1993).

---

[1] Where a *Brady* violation is asserted, defendant must demonstrate that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material. *United States v. Torres,* 569 F.3d 1277, 1281(10th Cir. 2009) (concluding the district court improperly applied the *Herrera* test in a case where defendant alleged prosecution violated *Brady* by failing to turn over evidence that impeached confidential informant who testified at trial). Montgomery asserts the government's failure to turn over the results of the CART analysis before trial constitutes a *Brady* violation. However, the only "newly discovered evidence" he presents are the three FBI documents produced in response to his FOIA requests. The memos contain no exculpatory evidence. Thus, the court must apply the *Herrera* analysis.

## C. Analysis

### 1. August 20, 2007, Request for CART Examination

The August 20, 2007, request for a CART examination of Montgomery's computers establishes only that the FBI case agent requested a CART analysis. It does not contain any evidence that is exculpatory or would be likely to result in acquittal.

### 2. September 21, 2007, Report on Results of CART Examination

Montgomery alleges the September 21, 2007, report of the CART analysis (taken in conjunction with the August 20, 2007, request for a CART examination) demonstrates that AUSA Snow lied to defense counsel about the status of the CART examination.

Montgomery's trial began September 17, 2007, and concluded September 20, 2007. [Dkt. ##49-53, 55-56]. The CART analysis document did not come into being until after the trial was over. Therefore, it does not support Montgomery's claim that Snow lied to Ward about the existence of a CART analysis. Further, the document is not "newly discovered evidence" within the meaning of Rule 33, since it was not in existence during the trial. Most importantly, it contains no information that is material, exculpatory or likely to produce acquittal.

In its order denying Montgomery's § 2255 motion, the court discussed at length the issue of Montgomery's hard drive. [Dkt. #142]. During the evidentiary hearing on the motion, FBI forensic examiner Buddy Carter testified that ordinarily, there is a six-month backlog of requests for CART examinations. On September 7, 2007, at the request of FBI case agent Joseph Cecchini, he performed an initial examination of the hard drive on Montgomery's computer because the case was about to go to trial. [Dkt. #131, May 23 Hearing Tr. at 105-106]. On September 11, 2007, after Carter completed the initial processing, he notified Cecchini that the processing was ready to be reviewed. [*Id.* at 114]. He told the agent there were hits for

"fastpitchdebbie" and "debbiehair," (Buchanan's chat names) in the pagefile.sys, but they were only chat fragments, and there was no child pornography on the hard drive. [*Id.* at 114, 117]. On September 21, 2007, Cecchini told Carter he did not need any results from the hard drive because the trial was complete. [*Id.* at 115].

At the pretrial hearing on September 6, 2007, Ward argued he needed the hard drive because if there was a total absence of information on his computer in which he had shown previous interest in children, it would be exculpatory. [Dkt. #111 at 22-23]. In response, Snow stated the government "would stipulate that no evidence was recovered from [defendant's] home that showed he had an interest in children." [*Id.* at 23]. Snow testified he believed at the time of trial that Carter had done a cursory forensic examination but that nobody had looked at everything on the computer. [Dkt. #131 at 167]. He knew Carter had not found any child pornography or chat logs, and recalled telling Ward the computer had no child pornography on it. [*Id.* at 167, 179-180].

The court rejects Ward's argument that Snow misrepresented the status of the hard drive to Ward.

### 3. July 31, 2008, Closing Memorandum

Montgomery claims that AUSA Snow ordered the destruction of evidence in a July 31, 2008, closing memorandum. The record does not support this claim. Montgomery was sentenced on December 11, 2007, and Judgment and Commitment was entered on December 19, 2007. Montgomery did not file a notice of appeal. His § 2255 motion was not filed until November 20, 2008. [Dkt. #70]. Thus, on July 31, 2008, his conviction was final and the government had no reason to believe that he would seek additional relief or that there was any need to preserve evidence for appeal.

Moreover, Snow advised in the closing memo that evidence could be destroyed or returned. The FBI returned Montgomery's computer hard drive to his wife on August 6, 2008. [Dkt. #126, May 5, 2011 Evidentiary Hrg. Tr. at 147]. Mrs. Montgomery threw the hard drive in the back of her truck and took it to her residence, where it was stored in a closet. [*Id.*]. In January 2011, she gave it to her daughter's boyfriend, who took it to Nashville, Tennessee and had a friend attempt to retrieve family photos. [*Id.* at 147-148, 154-155]. The boyfriend reported that the drive was clean and "there was nothing there." [*Id.* at 148]. In preparation for the evidentiary hearing on Montgomery's § 2255 motion, the hard drive was delivered to Montgomery's attorney, Barry Derryberry, who reported to Magistrate Judge Lane Wilson that forensic efforts to analyze the computer failed because the "hard drive is broken." [Dkt. #131, May 23, 2011 Evidentiary Hrg. Tr. at 3]. Montgomery has presented no evidence the government is responsible for the condition of the hard drive.

### 4. Other Allegations

Montgomery has alleged the government failed to preserve chat logs from some 40 days between January 23 and May 24, 2007, which he claims were in the government's possession. Plaintiff provides no proof chats took place on those dates, much less that records of those chats were destroyed. As set forth at length in the court's order denying Montgomery's § 2255 Motion to Vacate [Dkt. #242], no chat log was created in the initial chat between Montgomery and agent Ian Buchanan, posing as "fastpitchdebbie13," although Buchanan subsequently prepared a report about the chat. Buchanan testified all other chats were recorded and FBI-302s for the chats were prepared. Similarly, the forensic examination of Montgomery's computer hard drive yielded no record of the alleged missing chats.

Montgomery also alleges that the trial transcript and "discussions with persons knowledgeable as to information technology" reveal Buchanan committed perjury during the trial. A defendant's unsupported statement does not meet the standard for newly discovered evidence warranting a new trial. *Wion v. United States,* 337 F.2d 230, 231 (10th Cir. 1964).

### D. Conclusion

Montgomery has failed to demonstrate that he has discovered any new evidence that is material or exculpatory, or would likely have resulted in acquittal.

For the foregoing reasons, Montgomery's Motion for New Trial [Dkt. #101] is denied.

ENTERED this 27th day of February, 2012.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma